### J. E. WHITE v. STATE.

No. A-4006.    Opinion Filed June 23, 1923.
(215 Pac. 1079.)

**(Syllabus.)**

**Disturbance of Public Assemblage—Construction of Statute—Insufficiency of Evidence.** The words "without authority of law, willfully disturbs," and the words "assembly or meetings," as used in section 2003, Comp. Stat. 1921, construed and applied.

(a) According to the construction given these words and phrases, the proof was insufficient to support the verdict.

Appeal from County Court, Cotton County; J. C. Norman, Judge.

J. E. White was convicted of disturbing an assembly, and he appeals. Reversed.

Amil H. Japp, for plaintiff in error.

Geo. F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. Plaintiff in error, J. E. White, in this opinion referred to as the defendant, was on the 26th day of February, 1921, in the county court of Cotton county, by information charged with having willfully unlawfully, and without authority of law disturbed an assembly, to wit, a public school, by entering into said schoolhouse, closing the door, and preventing the pupils from entering the schoolhouse for a period of one hour, thereby breaking up and disturbing for such period the lawful session of said school. Defendant was found guilty as charged, and his punishment assessed at a fine of $250 and 20 days in the county jail. From the judgment so rendered, he appeals.

This prosecution was predicated upon section 2003, Comp. Stat. 1921, which is as follows:

"Any person who, without authority of law, willfully disturbs or breaks up any assembly or meeting, not unlawful in its character, other than a religious meeting, public meeting of electors, or funeral, is guilty of a misdemeanor."

A demurrer to the information was interposed, on the ground that it did not state facts sufficient to constitute a public offense. The demurrer was by the court overruled.

The chief witness for the state was Miss Grace Ward, who was the teacher of the public school where the alleged disturbance occurred. She testified that on the morning of February 16, 1921, when she arrived at the schoolhouse a few minutes before 9 o'clock, she found the defendant and his wife standing near the schoolhouse door, and that about a dozen children were thereabouts, engaged in sport or waiting for school to convene; that she unlocked the schoolhouse door and passed in, and that the defendant and his wife, at her invitation or with her permission, also entered the schoolhouse, for the purpose of discussing some incidents of the day previous,

in which the 13 year old son of the defendant had been chastised by Miss Ward. With the exception of the White boy, the school children who had come into the schoolhouse were requested to retire during this discussion; whether this request was made by Mr. or Mrs. White, or by Miss Ward, is not clearly shown.

The testimony of Miss Ward and that of other witnesses, including several children who looked in at windows and listened at the keyhole, as to just what was said during this conference, is hopelessly conflicting, except that all agree that there was no overt act of disturbance or breach of the peace. By some it was said that White or Mrs. White threatened violence to the teacher if she punished the boy in the future; others testified that Miss Ward threatened violence to Mrs. White in the event of any future difficulty. This conference lasted, according to the testimony of different witnesses, from 15 minutes to an hour. After the conference was concluded, Mr. and Mrs. White left the schoolhouse and grounds, and immediately thereafter Miss Ward rang the bell and convened school.

Upon this statement of the facts it seems doubtful to us whether the defendant "willfully and without authority of law disturb and break up" an assembly or meeting, within the meaning of the statute upon which this prosecution was based. The defendant and his wife were patrons of the school, and had a right to interview their son's teacher in an orderly, lawful way, not calculated to create a disturbance, either before or after school or during its session. If, as they claim, their child was ill and under the care of a physician, and the corporal punishment administered by the teacher was excessive or unreasonable, they had a right to lodge a protest with the teacher, so long as it was reasonably done and no breach of the peace was committed.

We also doubt whether the fact that some of the pupils of the school were at play on the school grounds and were there waiting for school to convene constituted this an "assembly" or "meeting," as was contemplated by the statute above quoted; the school, as such, was not disturbed or broken up; the most 'that can be said is that this interview operated as a delay to the convening of school for a short period. But whether or not this was an "assembly" or "meeting," within the meaning of the statute, we think that the disturbance was not such a "willful" disturbing, "without authority of law," as would bring it within the operation of this statute.

The judgment of the trial court is therefore reversed.

MATSON, P. J., and DOYLE, J., concur.